| UNITED STATES DISTRICT COURT | |
|---|---|
| SOUTHERN DISTRICT OF NEW YORK | |
| ------------------------------------------------------X | USDC SDNY |
| : | DOCUMENT |
| DRYWALL TAPERS AND POINTERS OF : | ELECTRONICALLY FILED |
| GREATER NEW YORK LOCAL UNION 1974, : | DOC #: _____ |
| IUPAT, AFL-CIO, : | DATE FILED: May 8, 2017 |
| : | |
| Petitioner, : | 16 Civ. 5172 (KPF) |
| : | |
| v. : | OPINION AND ORDER |
| : | |
| XTREME DRYWALL AND ACOUSTICS, : | |
| : | |
| Respondent. : | |
| : | |
| ------------------------------------------------------X | |

KATHERINE POLK FAILLA, District Judge:

Petitioner Drywall Tapers and Pointers of Greater New York Local Union 1974, IUPAT, AFL-CIO (the "Union") has filed a motion for summary judgment to confirm an arbitration award (the "Award") issued under Section 301 of the Taft-Hartley Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185. Respondent Xtreme Drywall and Acoustics did not appear in the underlying arbitration (the "Arbitration"). Nor has it appeared in the instant action. And because the undisputed facts of this case establish that the Award must be confirmed, the Court grants Petitioner's motion.

## BACKGROUND[1]

### A. Factual Background

Petitioner is a labor union under the LMRA that maintains its principal office in New York City, New York. (Pet'r 56.1 ¶ 1; Compl. ¶¶ 5-6). The Union

---

[1] This Opinion draws on facts from the Declaration of John Drew ("Drew Decl." (Dkt. #19)), and from the Affirmation of Lauren M. Kugielska ("Kugielska Aff." (Dkt. #18)), and

"represents employees in an industry affecting commerce as defined in Section 501 of the [LMRA]," 29 U.S.C. § 142, "and Section 3(4) of ERISA," *id.* § 1002(4). (Pet'r 56.1 ¶ 1; Compl. ¶ 5). Respondent is "a corporation duly organized and existing under the laws of New York State with its principal office and place of business" in Fishkill, New York. (Pet'r 56.1 ¶ 2; Compl. ¶ 7).

The case arises from Respondent's alleged breach of two collective-bargaining agreements: the Trade Agreement between the Union, the Drywall Taping Contractors' Association of Greater New York, and the Association of Wall-Ceiling & Carpentry Industry of New York, Inc. (the latter two, collectively, the "Associations") that was effective from September 6, 2006, to June 28, 2011, and the Trade Agreement between the Union and the Associations that is effective from August 3, 2011, to June 27, 2017. (Dkt. #18-2). The CBAs establish the terms and conditions upon which Union members "shall perform tapers', finishing, and pointers' work" for Association-member employers. (*Id.*). "Article XXI of the CBA[s] provides that [Respondent] shall pay benefit fund contributions for all work performed by its employees covered by the [CBAs] and to remit such benefits in accordance with the CBA[s]." (Compl. ¶ 10; *see also* Dkt. #18-2). Contributions made in accordance with this provision are to be paid into trust funds established by "trust agreements" into which the CBAs'

the exhibits attached thereto: the Complaint (the "Compl."), to which is attached a copy of the Decision of the Joint Trade Board (Dkt. #18-1; *accord* Dkt. #1), and the two relevant collective-bargaining agreements (the "CBAs" (Dkt. #18-2)). This Opinion also cites to Petitioner's Local Civil Rule 56.1 Statement of Material Facts ("Pet'r 56.1" (Dkt. #23)), which Statement is uncontested. For ease of reference, the Court refers to Petitioner's brief in support of its motion for summary judgment as "Pet'r Br." (Dkt. #20).

signatories entered contemporaneously with the execution of the CBAs. (Dkt. #18-2).

As relevant here, at Article XIII, Section 1, each CBA outlines a grievance procedure requiring "all complaints other than [e]mployee grievances [to] be presented to a Joint Committee and/or" to the Drywall Taping Industry Board (the "Joint Board"). (Dkt. #18-2). The Joint Board is composed of three members of the Associations, designated by the Associations, and three members of the Union, designated by the Union. (*Id.*). Section 6 of Article XIV further designates "[t]he decisions and findings of the Joint Board, including any imposition of penalties," as "final and binding upon the signatory contractors and the Union, all members of each thereof and all interested parties." (*Id.*). And Section 2 of Article XIII dictates that no right of appeal exists with respect to a final decision of the Joint Board. (*Id.*).

The dispute giving rise to the instant litigation

> arose when [Respondent] failed to remit benefit fund contributions in accordance with the CBA[s] for members Jonathan Restreppo for the weeks of September 1, 2010[;] September 15, 2010[;] September 8, 2010[;] September 22, 2010[;] September 29, 2010[;] October 6, 2010[;] and October 13, 2010; and Allan Sadicario for the weeks of February 17, 2015[;] February 24, 2015[;] March 3, 2015[;] and March 10, 2015.

(Pet'r 56.1 ¶ 4). The Union filed a Demand for Arbitration with the Joint Board and sent Respondent a Notice of Intention to Arbitrate. (*Id.* at ¶ 5 (citing Compl. ¶¶ 12-13); *see also* Drew Decl. ¶ 4; Compl., Ex. A).

3

On January 19, 2016, the Joint Board held a hearing, at which no one appeared on behalf of Respondent. (Compl., Ex. A). The Joint Board deliberated and

> found that [Respondent] breached the [CBAs] by failing to remit benefit contributions on behalf of Union members Jonathan Restreppo for the period September 1, 2010[,] through October 13, 2010[,] in the amount of $4,889.25 and Allen Sadicario for the period February 17, 2015[,] through March 10, 2015[,] in the amount of $3,436.96.

(Drew Decl. ¶ 5; *see also* Pet'r 56.1 ¶¶ 6-7; Compl., Ex. A). Following the hearing, a written award was rendered and delivered to Respondent. (Pet'r 56.1 ¶¶ 5, 8 (citing Drew Decl. ¶¶ 5-6)). "The Award directs [Respondent] to submit payment for the delinquent contribution amounts that the [Joint Board] determined were owed." (Drew Decl. ¶ 6 (citing Compl. ¶¶ 15-17 & Ex. A); *see also* Pet'r 56.1 ¶ 7). Payment was to be made within 72 hours. (Compl., Ex. A). Respondent neither complied with the terms of the Award nor commenced an action seeking to vacate or modify it. (Pet'r 56.1 ¶¶ 9-10 (citing Drew Decl. ¶ 7; Compl. ¶ 18)).

**B.    Procedural Background**

Petitioner brought the instant action against Respondent on June 30, 2016. (Dkt. #1). In response to an Order of this Court dated September 12, 2016 (Dkt. #5), Petitioner filed a motion for summary judgment and supporting papers on October 26, 2016 (Dkt. #11-23). Respondent has not appeared in this action.

**DISCUSSION**

**A.    Applicable Law**

"The LMRA establishes a federal policy of promoting 'industrial stabilization through the collective bargaining agreement,' with particular emphasis on private arbitration of grievances." *Nat'l Football League Mgmt. Council* v. *Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *United Steelworkers of Am.* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960)).[2] Accordingly, judicial "review of an arbitration award under the LMRA is ... 'very limited.'" *Id.* (quoting *Major League Baseball Players Ass'n* v. *Garvey*, 532 U.S. 504, 509 (2001) (per curiam)). "[U]nless the award is procured through fraud or dishonesty," "the arbitrator's factual findings, interpretation of the contract[,] and suggested remedies" are binding on the reviewing court. *Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund* v. *High Performance Floors Inc.*, No. 15 Civ. 781 (LGS), 2016 WL 3194370, at *2 (S.D.N.Y. June 6, 2016) (first alteration in original) (internal quotation marks omitted) (quoting *Local 97, Int'l Bhd. of Elec. Workers, A.F.L.-C.I.O.* v. *Niagara*

---

[2]    The LMRA, not the Federal Arbitration Act (the "FAA"), governs this Court's review of Petitioner's motion to confirm. "[I]n cases brought under Section 301 of the [LMRA] ... the FAA does not apply." *Coca-Cola Bottling Co. of N.Y.* v. *Soft Drink & Brewery Workers Union Local 812 Int'l Bhd. of Teamsters*, 242 F.3d 52, 53 (2d Cir. 2001). And Section 301 of the LMRA "serves as the foundation for a substantive body of federal law that is 'analytically distinct from the [FAA].'" *1199 SEIU United Healthcare Workers E.* v. *Lily Pond Nursing Home*, No. 07 Civ. 408 (JCF), 2008 WL 4443945, at *3 (S.D.N.Y. Sept. 29, 2008) (quoting *Westerbeke Corp.* v. *Daihatsu Motor Co.*, 304 F.3d 200, 221 (2d Cir. 2002)). Nonetheless, "the FAA is useful as a source of principles to guide the development of law under LMRA § 301 ... particularly [ ] in the context of a petition to confirm or vacate an arbitration award." *Id.* Both statutes call for courts to be "extremely deferential" when reviewing arbitration awards. *Supreme Oil Co.* v. *Abondolo*, 568 F. Supp. 2d 401, 405 (S.D.N.Y. 2008).

*Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999)), *reconsideration denied*, 2016 WL 3911978 (S.D.N.Y. July 15, 2016).

A court may not "review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement, but" instead may "inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Nat'l Football League*, 820 F.3d at 536. A reviewing court's "task is simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Id.* at 537 (quoting *United Paperworkers Int'l Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 38 (1987)). "As long as the award 'draws its essence from the collective bargaining agreement and is not merely the arbitrator's own brand of industrial justice,' it must be confirmed." *Id.* (quoting *Int'l Bhd. of Elec. Workers, Local 97* v. *Niagara Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir. 1998)).

Thus, "[c]onfirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court." *Trs. for the Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund* v. *Odessy Constructioncorp*, No. 14 Civ. 1560 (GHW), 2014 WL 3844619, at *1 (S.D.N.Y. Aug. 1, 2014) (internal quotation marks omitted) (quoting *N.Y. Med. Ctr. of Queens* v. *1199 SEIU United Healthcare Workers E.*, No. 11 Civ. 4421 (ENV) (RLM), 2012 WL 2179118, at *4 (E.D.N.Y. June 13, 2012)). "When a petition to

6

confirm an arbitration award is unopposed, courts should generally treat 'the petition and accompanying record ... as akin to a motion for summary judgment.'" *Id.* at *2 (omission in original) (quoting *D.H. Blair & Co.* v. *Gottdiener,* 462 F.3d 95, 109 (2d Cir. 2006)). "Thus, like unopposed summary judgment motions, unopposed confirmation petitions 'must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *D.H. Blair & Co.*, 462 F.3d at 110).

**B.     Analysis**

Viewed in light of the LMRA, the undisputed facts of this case make plain that the Court must confirm the Award. The CBAs required Respondent to remit benefit-fund contributions for all work performed by its employees in accordance with the CBAs and trust agreements. The CBAs entitled Petitioner to pursue arbitration if Respondent failed to make those contributions. Petitioner determined that Respondent had not made the required benefit contributions on behalf of Union members Jonathan Restreppo, for the time period from September 1, 2010, through October 13, 2010, and Allen Sadicario, for the time period from February 17, 2015, through March 10, 2015. Petitioner filed a Demand for Arbitration with the Joint Board, and served Respondent with a Notice of Intention to Arbitrate. On the basis of the CBAs and the unopposed testimony of John Drew, President of District Council 9, International Union of Painters and Allied Trades, which is comprised of local constituents including Petitioner (Drew Decl. ¶ 1), the Joint Board found Respondent "guilty on all charges" (Compl., Ex. A). The Joint

7

Board rendered a written decision directing Respondent to remit benefit fund contributions on behalf of Jonathan Restreppo in the amount of $4,889.25 for the 225 hours of work that he performed on Respondent's behalf from September 1, 2010, through October 13, 2010, and on behalf of Allen Sadicario in the amount of $3,436.96 for the 121 hours of work he performed on Respondent's behalf from February 17, 2015, through March 10, 2015.

Put simply, the Joint Board construed and applied the CBAs when it issued the Award. The LMRA, in turn, requires the Court to confirm the Award.

## CONCLUSION

For the reasons set forth above, Petitioner's motion for summary judgment to confirm the Award is GRANTED. The Clerk of Court shall enter judgment for Petitioner, terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: May 8, 2017
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge